CV13- 01296

SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

TYRELL BROWN,

                                      Plaintiff,

-against-

CITY OF NEW YORK, CAPTAIN JOHN DOE,
SERGEANT GRILLO, JOHN DOE POLICE OFFICERS
1-10 FROM 73RD PRECINCT,

                                      Defendants.

------------------------------------------------------------------- x

COMPLAINT AND
JURY DEMAND

Docket No.

ECF CASE

MAUSKOPF, J.

POLLAK, M.J

Plaintiff Tyrell Brown, by his attorney Cynthia H. Conti-Cook, of Stoll, Glickman & Bellina, LLP, for his complaint against defendant New York Police Department officers, alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a July 10, 2011 incident in which defendants, acting under color of state law, falsely arrested plaintiff for approximately 16 hours before the District Attorney's office declined to prosecute him.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Captain John Doe was, at all times here relevant, a police officer of the NYPD,

and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Captain John Doe was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Captain John Doe was under the command of the 73rd precinct on the date of the incident. While an officer at the 73rd precinct, Doe's supervisors failed to train, supervise, discipline and control Captain John Doe. On information and belief, at all times relevant hereto, Defendant Captain John Doe was under the command of the 73rd precinct and is sued in his individual capacity.

11. Sergeant Grillo was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Sergeant Grillo was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Sergeant Grillo was under the command of the 73rd precinct on the date of the incident. While an officer at the 73rd precinct, Doe's supervisors failed to train, supervise, discipline and control Sergeant Grillo. On information and belief, at all times relevant hereto, Defendant Sergeant Grillo was under the command of the 73rd precinct and is sued in his individual capacity.

12. Police Officer John Doe was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Doe was involved in the decision to arrest plaintiff without probable cause or failed to

intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Doe was under the command of the 73rd precinct on the date of the incident. While an officer at the 73rd precinct, Doe's supervisors failed to train, supervise, discipline and control Doe. On information and belief, at all times relevant hereto, Defendant John Doe was under the command of the 73rd precinct and is sued in his individual capacity.

13. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

14. Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL CHARGES

15. On July 10, 2011, at approximately 3:00 a.m. at Dumont and Livonia, in Brooklyn, New York, plaintiff was attending a family BBQ at his aunt's house.

16. Plaintiff heard shots fired and soon there were many police officers on his aunt's family's block.

17. Plaintiff was inside his aunt's front gate when officers stopped him, along with one other person from the BBQ. After searching him and asking for identification, police told him they'd let him go soon.

18. Plaintiff gave the police his identification.

19. A few minutes later, plaintiff was placed in handcuffs and told it would only be for a few minutes "while they clean the scene".

20. A few minutes later, plaintiff's identification was taken and he was told that as long as he didn't have any warrants, he'd be released.

21. Plaintiff's aunt told the officers that he was at the BBQ during the time shots were fired.

22. A few minutes later, plaintiff was put in a police van. Sergeant Grillo told him that he would be released from the precinct.

23. Plaintiff was told by another officer that he'd be released from the precinct after they wrote 250's, or stop and frisk reports.

24. At the precinct, plaintiff asks several times what he was being charged with and whether he was going to be released.

25. Two detectives questioned plaintiff for approximately 30 minutes about the shots fired on his aunt's family's block.

26. Sergeant Grillo told plaintiff at the precinct that the Captain was not allowing anyone to be released.

27. Plaintiff was transported to Central Booking. He never learned what he was being charged with.

28. Plaintiff was released from Central Booking when the District Attorney's office declined prosecution.

29. Plaintiff had to call his employer from the precinct to report that he would be absent from work the next day because he was under arrest.

30. At all times during the events described above, the defendant police officers

were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

31. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

32. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

    e. Physical pain and suffering;

    f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

    g. Loss of liberty;

h. Lost wages.

### FIRST CAUSE OF ACTION
Defendants Falsely Arrested and Falsely Imprisoned
Plaintiff Under 42 U.S.C. § 1983

33. The above paragraphs are here incorporated by reference.

34. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

35. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

36. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

37. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

38. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

39. All of this occurred without any illegal conduct by plaintiff.

40. The District Attorney's Office declined to prosecute plaintiff.

41. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

42. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

43. The above paragraphs are here incorporated by reference.

44. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

45. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

46. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

47. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

48. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

49. All of this occurred without any illegal conduct by plaintiff.

50. The District Attorney's Office declined to prosecute plaintiff.

51. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

52. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful,

unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

53. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the Constitution of the State of New York.

54. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### THIRD CAUSE OF ACTION
### False Arrest and False Imprisonment
### (Against All Defendants)

55. The above paragraphs are here incorporated by reference.

56. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

57. Defendants intended to confine plaintiff, plaintiff was conscious of his confinement and did not consent to his confinement.

58. The District Attorney's Office declined to prosecute plaintiff.

59. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

60. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### FOURTH CAUSE OF ACTION
### Assault and Battery
### (Against All Defendants)

61. The above paragraphs are here incorporated by reference.

62. Upon approaching, pushing, throwing plaintiff to the ground, handcuffing and arresting plaintiff, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

63. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

64. Defendants used excessive and unnecessary force with plaintiff.

65. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

66. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### FIFTH CAUSE OF ACTION
### Negligent Hiring & Retention
### (Against City Defendant)

67. The above paragraphs are here incorporated by reference.

68. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

69. Upon information and belief, defendant City, through the NYPD, owed a duty

of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

70. Upon information and belief, defendant officers were incompetent and unfit for their positions.

71. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

72. Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

73. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

## SIXTH CAUSE OF ACTION
## MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

74. The above paragraphs are here incorporated by reference.

THE CITY OF NEW YORK AND NYPD FAIL TO SCRUTINIZE OFFICERS AND PRECINCTS WITH HISTORIES OF MULTIPLE LAWSUITS FOR CIVIL RIGHTS VIOLATIONS, LIKE THE 73RD PRECINCT

75. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid

---

[1] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

$80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

76. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

77. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits

---

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

78. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

79. The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing

number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

80. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[4] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[5]

81. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of

---

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

82. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

83. The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373

were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[6]

84. The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[7]

85. The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

86. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. In 2002, the percentage of officers who

---

[6] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on February 18, 2010. On the website, the NYCLU collects the same data back to 2004.
[7] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.

were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[8] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

87. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

88. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has

---

[8] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

89. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

90. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiff punitive damages in an amount to be determined by a jury;

C. Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:     March 8, 2013
Brooklyn, New York

TO:

City of New York
100 Church Street
New York, NY 10007

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com